**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

NOV 1 4 2001

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

L.A. THOMPSON,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )   CIVIL ACTION 00-D-1468-S
                                  )
EQUIFAX CREDIT INFORMATION        )
SERVICES, INC.,                   )
                                  )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

Before the court is a Motion For Summary Judgment ("Motion")
filed August 30, 2001, by Defendant Equifax Credit Information
Services, Inc., ("Defendant"), with a Brief in Support thereof
("Defendant's Brief").  Plaintiff L.A. Thompson ("Plaintiff")
filed an Opposition To Defendant's Motion For Summary Judgment on
September 28, 2001, which the court construes as a "Response."
Defendant filed a Reply on October 10, 2001.  After careful
consideration of the arguments of the parties, the relevant law,
and the record as a whole, the court finds that Defendant's
Motion is due to be granted in part and denied in part.


## I.  JURISDICTION AND VENUE

The court has subject matter jurisdiction over this action
pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and
28 U.S.C. § 1367 (supplemental jurisdiction).  The parties do not
contest personal jurisdiction or venue.

65

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment can be entered on a claim only if the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As to materiality, substantive law determines which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Id.</u>  As to genuineness, a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Id.</u>; <u>see also</u> <u>Barfield v. Brierton</u>, 883 F.2d 923, 933 (11th Cir. 1989).  "In assessing whether the movant has met [its] burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."  <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) (citations omitted).

## III.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff alleges that Defendant, a credit reporting company, issued credit reports containing false information about him to third parties, causing him damages.  Defendant allegedly

2

issued these credit reports in connection with the following transactions between Plaintiff and third parties.

Plaintiff desired to become a motor vehicle dealer in the state of Alabama, which required him to obtain a surety bond in the amount of $10,000.[1]  When Plaintiff applied for a surety bond from Western Surety through Garner Insurance Agency, he received a rejection letter, dated September 24, 1999, because of credit information issued to Western Surety by Defendant.[2]  Thereafter, Plaintiff requested and received a copy of his credit file from Defendant, which copy was dated September 27, 1999.[3]  Plaintiff claims the credit report stated falsely that: 1) there was a satisfied judgment against Plaintiff in the amount of $106;[4] 2) Plaintiff had a charged off balance on a Discover credit card;[5] 3) Plaintiff had a First USA credit card account with a negative history;[6] and 4) Plaintiff had another First USA credit card with a charged off balance of $290.[7]  After reading the report with

---

[1] Pl. Aff., ¶ 1.

[2] Id., ¶ 2.

[3] Id., ¶ 2.

[4] Pl. Aff., ¶ 2; Pl. Ex. 1.

[5] Pl. Aff., ¶ 2.

[6] Id.

[7] Id.

the allegedly false information, Plaintiff telephoned Defendant
to dispute the allegedly false items.[8]

On November 2, 1999, Plaintiff applied for another surety
bond, again from Western Surety, but this time through Salter
Insurance Agency.[9]  Once again, the request was denied, based on
credit information received from Defendant.[10]  Again, Plaintiff
immediately telephoned Defendant and requested a copy of his
credit file.[11]  Once more, Plaintiff disputed the alleged false
accounts.[12]

On November 15, 1999, Defendant replied to Plaintiff in
writing that it had reinvestigated Plaintiff's disputes, and all
were verified as accurate, with three exceptions.[13]  Defendant
deleted one of the First USA credit card accounts from
Plaintiff's credit file.  Defendant neither deleted nor verified
the second First USA credit card account on Plaintiff's credit
file, and in fact failed to mention it in the report.[14]  Finally,

---

[8] Id.

[9] Pl. Aff., ¶ 4; Pl. Ex. 3.

[10] Pl. Aff., ¶ 4.

[11] Id.

[12] Id.

[13] Id., ¶ 6; Pl. Ex. 4.

[14] Pl. Aff., ¶ 6; Pl. Ex. 4.

4

Defendant added an allegedly false Bank One/BP Oil account in the reinvestigation report.[15]

On December 1, 1999, Plaintiff applied for credit with the Alabama Power Company to buy a clothes dryer, but was denied favorable credit terms because of a consumer credit report issued by Defendant.[16]  Around April 2000, Defendant allegedly added a false statement to Plaintiff's credit file, stating that Plaintiff had a credit card account with Sears.[17]  On May 2, 2000, Plaintiff's counsel contacted Defendant, disputing allegedly incorrect items in Defendant's report.[18]  Although there is some dispute as to what the report contained at that time, it is undisputed that it contained allegedly inaccurate information.[19]

Defendant issued a consumer credit report to Headland National Bank on May 11, 2000, containing information of Plaintiff's allegedly false accounts with Discover and Sears, and the allegedly false report of a satisfied judgment against

---

[15] Pl. Aff., ¶ 6; Pl. Ex. 4.

[16] Pl. Aff., ¶ 7; Pl. Ex. 5.

[17] Pl. Aff., ¶ 8.

[18] Affidavit of Maynard Bryant ("Bryant"), Supervisor in the Office of Consumer Affairs at Equifax Credit Information Services, Inc., ¶ 8.

[19] Compare Bryant Aff., ¶ 8, with Pl. Resp. at 4-5.

Plaintiff.[20]  In addition, Defendant neither deleted nor verified the Bank One/BP Oil account, and in fact failed to mention it in the report.[21]  Also, one of the First USA accounts was reasserted in the report.[22]  Plaintiff's attorney wrote Defendant on May 17, 2000, requesting that the allegedly false satisfied judgment be removed from Plaintiff's credit file, and requesting that a statement of Plaintiff's dispute with the Hughston Orthopedic Clinic be included in his credit file.[23]

In response to Plaintiff's attorney's notification, Defendant performed a second reinvestigation, the results of which were mailed to Plaintiff on May 31, 2000.[24]  The second reinvestigation report still had the allegedly false satisfied judgment recorded against Plaintiff, the allegedly false Sears account, and the allegedly false First USA account; the allegedly false Bank One/BP Oil account was reasserted; and the allegedly false Discover account was deleted.[25]  Defendant reported to Plaintiff's attorney on June 27, 2000, that Plaintiff's credit file had been updated in accordance with his request made in the

---

[20] Pl. Aff., ¶ 11; Pl. Ex. 8.

[21] Pl. Aff., ¶ 11; Pl. Ex. 8.

[22] Pl. Aff., ¶ 11; Pl. Ex. 8.

[23] Pl. Aff., ¶ 10; Pl. Ex. 9.

[24] Pl. Ex. 10.

[25] Id.

6

May 17, 2000 letter mailed by his attorney.[26]  However, when
Plaintiff requested a copy of his consumer credit report, which
was provided by Defendant on July 18, 2000,[27] the report did not
contain the statement of his dispute with the Hughston Orthopedic
Clinic, as requested by the May 17, 2000 letter.[28]

Plaintiff's attorney contacted Discover directly, disputing
the validity of Plaintiff's alleged account with it, to which
Discover responded by letter dated May 5, 2000, that it would
send a letter to the "major credit reporting agencies in [his]
area to delete the . . . account from [his] credit history."[29]
Plaintiff's attorney also contacted Sears directly, disputing the
validity of Plaintiff's alleged account, to which Sears responded
by letter dated June 9, 2000, that the credit bureau's report was
inconsistent with its information, and that it had sent the
necessary documents to the credit bureau requesting that the
bureau's report be corrected.[30]

A consumer credit report issued to Headland National Bank by
Defendant on June 20, 2000, still reported the allegedly false
satisfied judgment against Plaintiff, the allegedly false First

---

[26] Pl. Aff., ¶ 10; Pl. Ex. 14.

[27] Pl. Aff., ¶ 10; Pl. Ex. 15.

[28] Pl. Aff., ¶ 10; Pl. Ex. 15.

[29] Pl. Aff., ¶ 9; Pl. Ex. 12.

[30] Pl. Aff., ¶ 9; Pl. Ex. 13.

7

USA account, and no statement of Plaintiff's dispute with the Hughston Orthopedic Clinic.[31]

Defendant sent another report to Headland National Bank on November 9, 2000, which showed Plaintiff had no credit history at all.[32] Defendant also allegedly sent reports indicating Plaintiff had no credit history to Dothan Truck and Auto, 1) on November 18, 2000, when Plaintiff sought to purchase an automobile for personal use,[33] and 2) on another occasion, when Plaintiff sought to purchase a truck, which was going to be used for both personal and business purposes.[34] Plaintiff further alleges that a report falsely indicating that Plaintiff had no credit history was issued at some point to Miller Welding.[35]

In her First Amended Complaint, filed February 2, 2001, Plaintiff asserts four claims against Defendant. First, Plaintiff claims Defendant negligently and willfully violated 15 U.S.C. §§ 1681e(b); 1681i(a); and 1681i(c), which are provisions

---

[31] Pl. Aff., ¶ 11; Pl. Ex. 11.

[32] Pl. Ex. 16.

[33] Pl. Dep. at 90:13-23; Pl. Aff., ¶ 11; Pl. Ex. 17.

[34] Pl. Dep. at 90:13-23. Plaintiff also alleges that a report falsely indicating that Plaintiff had no credit history was issued to DirecTV when Plaintiff sought to purchase satellite TV services in April, 2001. Pl. Aff., ¶ 11; Pl. Ex. 18. However, this incident arose after Plaintiff filed his First Amended Complaint, and therefore cannot serve as the basis for a claim in this case.

[35] Pl. Aff., ¶ 11.

of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u.[36]  Second, Plaintiff claims Defendant breached a duty owed to Plaintiff to exercise reasonable care in investigating and reporting accurate and truthful credit information.[37]  Third, Plaintiff claims he demanded Defendant publish a retraction of the information which Plaintiff has alleged was false, and Defendant failed to do so, in violation of Alabama Code § 6-5-186.[38]  Fourth, Plaintiff claims Defendant knew or should have known that the credit information published by Defendant regarding Plaintiff was false, and acted with reckless disregard as to whether or not it was false, and that Defendant is thus liable for libel, slander, libel per se, slander per se, slander of credit, and defamation.[39]  Defendant moves for summary judgment on all claims, with the exception of Plaintiff's claim under Alabama Code § 6-5-186.

## IV. DISCUSSION

### A. FCRA

The FCRA was established to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of

---

[36] First Am. Compl., ¶¶ 31-35.

[37] Id., ¶¶ 27-28.

[38] Id., ¶ 24.

[39] Id., ¶ 23.

commerce for consumer credit, personnel, insurance, and other
information in a manner which is fair and equitable to the
consumer, with regard to the confidentiality, accuracy,
relevancy, and proper utilization of such information . . . ."
15 U.S.C. § 1681(b).  Damages are available for both negligent
and willful violations of any requirement of the FCRA.  15 U.S.C.
§ 1681(n) (willful); 15 U.S.C. § 1681(o) (negligent).  It is
undisputed that Defendant is a consumer reporting agency, as
required for a cause of action to exist under §§ 1681e(b),
1681i(a), and 1681i(c) of the FCRA.  See 15 U.S.C. § 1681a(f).

### 1. *Consumer Purposes*

At the outset, the court can quickly dispose of some of
Plaintiff's claims.  Both parties agree that credit reports
issued in connection with business transactions are not "consumer
reports" within the meaning of the FCRA.[40]  See 15 U.S.C. §
1681a(d).  Thus, summary judgment is due to be granted in favor
of Defendant on Plaintiff's claims based on the consumer credit
reports furnished by Defendant to third parties for business
reasons.  In Plaintiff's deposition, he indicated that the
following third parties received consumer credit reports for
business reasons: Garner Insurance Agency,[41] Salter Insurance

---

[40] Def. Mot. at 13; Pl. Resp. at 20.

[41] Pl. Dep. at 31:14-18.

10

Agency,[42] and Miller Welding.[43]  Accordingly, Plaintiff cannot base a claim under the FCRA on consumer credit reports issued to those third parties.

The court must now determine if there are any remaining third parties to whom Defendant sent "consumer reports" containing false information.  The record reflects that consumer reports on Plaintiff were issued by Defendant to 1) Alabama Power, when Plaintiff attempted to purchase a new clothes dryer,[44] 2) Dothan Truck and Auto, when Plaintiff sought to purchase an automobile for personal use,[45] and a truck, which was going to be used for both personal and business purposes;[46] and 3) Headland National Bank, once in May 2000, once in June 2000, and once on November 9, 2000.[47]

The court notes the distinction between the consumer credit reports issued to Headland National Bank in May and June, 2000,

---

[42] Pl. Dep. at 56:16-57:1.

[43] Pl. Dep. at 90:8-12.

[44] Pl. Dep. at 51:10-18.

[45] Pl. Dep. at 90:13-23.

[46] Pl. Dep. at 90:13-23.

[47] Pl. Exs. 8, 11, and 16.  Based on the reports sent to Headland National Bank, and the Notice of Reinvestigation and Disclosure sent to Plaintiff on May 31, 2000, Plaintiff's Exhibit 10, the court infers that similar information was sent to Alabama Power, from whom Plaintiff was denied favorable credit terms on December 3, 1999, based on allegedly false information contained in the consumer credit report issued by Defendant. Pl. Ex. 5.

and to Alabama Power in December, 1999, and those issued to Headland National Bank on November 9, 2000,[48] and Dothan Truck and Auto on November 18, 2000.[49] The former consumer credit reports contained allegedly false adverse information regarding Plaintiff's credit, while the latter reports contained allegedly false information that Plaintiff had no credit, good or bad.

Defendant argues that the information it disseminated to Headland National Bank and Dothan Truck and Auto, on or after November 9, 2000, did not constitute "consumer reports"[50] because it took Plaintiff's credit file "off-line" when his Complaint was filed on September 15, 2000.[51] The court disagrees with Defendant's labeling of the reports.

Such information, according to the plain language of the statute, does constitute a consumer report. Section 1681a provides the following:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity,

---

[48] Pl. Ex. 16.

[49] Pl. Ex. 17.

[50] Def. Reply at 7-8.

[51] Defendant claims that when a consumer files a lawsuit against it, the company does not publish the consumer's credit file, in order to "protect[] the consumer, because Defendant has been notified that there may [be] an inaccuracy in the file," and to "protect [Defendant] from republishing inaccuracies." Bryant Aff., ¶¶ 18-19.

12

> character, general reputations, personal
> characteristics, or mode of living which is used or
> expected to be used or collected in whole or in part
> for the purpose of serving as a factor in establishing
> the consumer's eligibility for
> (A) credit or insurance to be used primarily for
> personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of
> this title.

The information was a communication, by a consumer reporting

agency, it beared on Plaintiff's credit worthiness, and was used

as a factor in establishing the consumer's eligibility for credit

or credit worthiness, to be used primarily for personal, family,

or household purposes.   In this case, it was used by Alabama

Power Company to deny Plaintiff favorable credit terms on a

clothes dryer;[52] and it was used by Dothan Truck and Auto, even

though in that particular case the information stated "file

unavailable online," to deny Plaintiff the opportunity to

purchase an automobile on credit.[53]   Accordingly, the court finds

that those "consumer reports" may serve as the basis for claims

under the FCRA.


### 2. § 1681e(b)

Plaintiff asserts that Defendant negligently and willfully

violated § 1681e(b) by failing to maintain reasonable procedures

---

[52] Pl. Ex. 5.

[53] Pl. Ex. 17.

13

to assure the maximum possible accuracy of information it reported about him.[54] Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The Eleventh Circuit has stated the following with respect to § 1681e(b):

> In order to make out a prima facie violation of section [1681e](b), the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing "inaccurate" information. If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section [1681e](b), and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency. The Act, however, does not make reporting agencies strictly liable for all inaccuracies. The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases. Thus, prior to sending a section [1681e](b) claim to the jury, a credit reporting agency can usually prevail only if a court finds, as a matter of law, that a credit report was "accurate".

Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991).

In this case, Plaintiff has created a genuine issue of material fact as to whether Defendant's consumer credit reports issued to Alabama Power and Headland National Bank before

---

[54] Pl. Resp. at 8.

14

November 9, 2000, were accurate.  The Notice of Reinvestigation

and Disclosure issued by Defendant to Plaintiff on May 31,

2000,[55] shows Plaintiff's credit file still contained accounts

the validity of which Plaintiff contests, such as the judgment in

the Circuit Court of Houston County, Alabama,[56] and the Sears

Card.[57]  In addition, Plaintiff has established a genuine issue

of material fact as to whether the reports issued on and after

November 9, 2000, which indicated Plaintiff had no credit

history, were accurate because they failed to state that

Defendant had a good credit history with Headland National

Bank.[58]

Defendant argues that despite any showing of inaccuracies,

it followed reasonable procedures, as required by the statute. 15

U.S.C. § 1681e(b).  Namely, Defendant asserts that it relied on

information from "nationally-recognized lenders, including Sears,

Discover, First Tennessee Bank, and Regions Bank."[59]  The court,

however, cannot find as a matter of law that reliance on

creditors alone is a reasonable procedure.  See, e.g., Bryant v.

TRW, Inc., 689 F.2d 72, 77-78 (6th Cir. 1982) (rejecting the

_____

[55] Pl. Ex. 10.

[56] Pl. Ex. 7.

[57] Pl. Ex. 13.

[58] See, e.g., Pl. Ex. 8.

[59] Def. Mot. at 18.

consumer credit reporting agency's argument that the erroneous information in the plaintiff's consumer report was furnished by the creditor and that, under § 1681e(b), "all it had to do was report accurately whatever information the creditors furnished").

As the court in <u>Cahlin</u> stated, whether Defendant followed reasonable procedures will be a jury question in the overwhelming majority of cases. 936 F.2d at 1156. Following <u>Cahlin</u>, the court finds that this case falls within the overwhelming majority of cases in which a jury will be required to determine whether the procedures followed by Defendant were reasonable.

Defendant claims that it should still be granted summary judgment on Plaintiff's claim under § 1681e(b) because Plaintiff cannot prove damages which are recoverable under FCRA.[60] Injury to Plaintiff and causation will be a necessary prerequisite to any action brought by Plaintiff, seeking actual damages under § 1681n[61] and/or § 1681o, the damages provisions of the FCRA. Thus, the court will defer discussing damages until it has determined whether or not there is a genuine issue of material fact as to whether Defendant violated each of the alleged provisions of the FCRA. As to § 1681e(b), the court finds that

---

[60] Def. Mot. at 7.

[61] However, the court notes that Plaintiff may recover punitive damages under § 1681n without recovering actual damages. <u>Bakker v. McKinnon</u>, 152 F.3d 1007, 1013 (8th Cir. 1998) (citing <u>Yohay v. City of Alexandria Employees Credit Union, Inc.</u>, 827 F.2d 967, 972 (4th Cir. 1987)).

Plaintiff has established a genuine issue of material fact as to
whether Defendant violated this section.

### 3. § 1681i(a)

Plaintiff claims Defendant negligently and willfully
violated § 1681i(a) of the FCRA.  Section 1681i(a) relates to
reinvestigation of disputed information and sets out the
procedures that a consumer reporting agency must follow when a
consumer "notifies" it "directly" of inaccurate information
contained in a consumer report.

Plaintiff originally complained to Defendant in September,
1999, after Western Surety declined his application for a surety
bond based on allegedly false information contained in a credit
report issued by Defendant.  Thereafter, Defendant sent Plaintiff
a copy of his Consumer Credit Report (credit file), dated
September 27, 1999.[62]  Plaintiff complained to Defendant again in
November, 1999, after Salter Insurance Agency denied his
application for a surety bond based on allegedly false
information contained in a credit report issued by Defendant.
After the second complaint, Defendant sent Plaintiff a Notice of
Reinvestigation, dated November 15, 1999.  While the credit
reports issued to the insurance agencies may not serve as the

---

[62] Pl. Ex. 2.

basis for a cause of action under FCRA, the reinvestigation can. <u>See</u> 15 U.S.C. § 1681i(a) (no requirement that the underlying reinvestigation be based on a consumer report). On May 2, 2000, Plaintiff's attorney again disputed the alleged false information, and did so again by letter on May 17, 2000, to which Defendant responded with a second Notice of Reinvestigation dated May 31, 2000.

Plaintiff claims Defendant's reinvestigations were not sufficient because Defendant did not discover and remove the alleged false information from Plaintiff's credit file. At issue is the adequacy of Defendant's reinvestigations.

The Third, Fifth, and Seventh Circuit Courts of Appeals have held that once a credit reporting agency is on notice that a consumer disputes information contained in his or her credit file, exclusive reliance on resources may not be enough research in a reinvestigation. The holdings of all three circuits are set out in <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220, 224-26 (3rd Cir. 1997). The Seventh Circuit Court of Appeals reasoned that when "a credit reporting agency receives notice of a dispute, it can target its resources in a more efficient manner and conduct a more thorough investigation." <u>Id.</u> (citing <u>Henson v. CSC Credit Servs.</u>, 29 F.3d 280, 286-87 (7th Cir. 1994)). The Fifth Circuit Court of Appeals reasoned that "'the statute places the burden of

18

investigation squarely on' the consumer reporting agency." Id.
(quoting Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir.
1993)).  The Third Circuit Court of Appeals agreed and held that
a consumer reporting agency's responsibilities "imposed by
§ 1681i(a) must consist of something more than merely parroting
information received from other sources," and that a
"'reinvestigation' that merely shifts the burden to the consumer
and the credit grantor cannot fulfill the obligations
contemplated by the statute." Id.  The Cushman court noted that
"there [was] no evidence that [the consumer reporting agency]
took the necessary steps to obtain access to pertinent documents
from the credit grantors that would enable [the consumer
reporting agency] to perform a handwriting comparison."  115 F.3d
at 222.  The court does not find that a handwriting comparison is
required, but the court does find that it is an example of the
type of evidence showing the higher degree of investigation
required in a reinvestigation by a consumer reporting agency.

Defendant claims it fully performed its duty under
§ 1681i(a) because it relied on reliable sources of
information,[63] including National Data Retrieval ("NDR"),[64]

---

[63] Bryant Aff., ¶ 12.

[64] Id., ¶¶ 5, 7, 8.

Discover Card,[65] Sears,[66] and First USA.[67]  Such reliance is the

exact sort of parroting the Third Circuit held is insufficient in

a reinvestigation.  Accordingly, the court finds that there is a

genuine issue of material fact as to whether Defendant's

reinvestigation was adequate.

### 4. § 1681i(c)

Section 1681i(c) of the FCRA provides the following:

> Whenever a statement of a dispute is filed, unless there
> is reasonable grounds to believe that it is frivolous
> or irrelevant, the consumer reporting agency shall, in
> any subsequent consumer report containing the
> information in question, clearly note that it is
> disputed by the consumer and provide either the
> consumer's statement or a clear and accurate
> codification or summary thereof.

15 U.S.C. § 1681i(c).  As previously stated, Plaintiff's attorney

requested Defendant, in writing, on May 17, 2000, to include his

explanation of a dispute regarding the Hughston Orthopedic Clinic

account in his credit file.[68]  Defendant wrote Plaintiff's

counsel on June 27, 2000, that it had updated Plaintiff's credit

---

[65] Id., ¶ 13.

[66] Id., ¶ 14.

[67] Id., ¶ 16.

[68] Pl. Ex. 9.

file in accordance with his request[69]  However, the copy of

Plaintiff's credit file provided by Defendant, dated July 19,

2000, did not include his explanation of the Hughston Orthopedic

Clinic dispute.[70]  Accordingly, the court finds that there is a

genuine issue of material fact as to whether Defendant violated

§ 1681i(c).


### 5. Negligence Damages, § 1608o

Damages for negligent violations of FCRA available under

§ 1681o include actual damages and the costs of the action, with

reasonable attorney's fees.  Actual damages have been found to

include damages for humiliation, mental distress, damages for

injury to reputation and creditworthiness.  <u>Cousin v. Trans Union

Corp.</u>, 246 F.3d 359, 369 n.15 (5th Cir. 2001).  Actual damages

may also include out-of-pocket expenses for attorney's fees

incurred prior to litigation of a plaintiff's FCRA claim.

<u>Casella v. Equifax Credit Info. Servs.</u>, 56 F.3d 469 (2nd Cir.

1995).  However, expenses (including attorney's fees) of

notifying a credit reporting agency that it has reported

inaccurate information, rather than seeking to require it to

comply with a provision of the statute, are not actual damages.

---

[69] Pl. Ex. 14.

[70] Pl. Ex. 15.

21

<u>Id.</u>  Actual damages are generally the same as compensatory damages, 22 Am. Jur. 2d <u>Actual Damages</u> § 24, and some courts have used them interchangeably in the context of FCRA.  <u>See</u>, <u>e.g.</u>, <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 664 (7th Cir. 2001).

Defendant argues that summary judgment should be entered against Plaintiff based on a lack of proof of recoverable damages.  Defendant relies on <u>Cousin v. Trans Union Corp</u>.  246 F.3d 359, 371 (5th Cir. 2001).  In <u>Cousin</u>, the Fifth Circuit Court of Appeals analogized emotional distress damages under FCRA to emotional distress damages under cases involving violations of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, to hold that the plaintiff's trial testimony that he was "very upset" and "angry" was insufficient evidence of actual damages.  The court, therefore, reversed the jury's emotional distress award of $40,000.  <u>Id.</u>

However, humiliation and mental anguish may be awarded as actual damages even if unaccompanied by out-of-pocket losses, if warranted by the evidence.  <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 296 (5th Cir. 1993).  The evidence in <u>Stevenson</u> was similar to that presented here.  <u>Id.</u> at 297.  The plaintiff in <u>Stevenson</u> was shocked to learn of his "bad credit rating after maintaining a good credit reputation since 1932"; after which he was "denied credit three times during [the consumer reporting agency's]

22

reinvestigation: by Bloomingdale's, by Bank One, and by Gabbert's Furniture Company"; "he had to go 'hat in hand' to the president of Bank One, who was a business associate and friend, to explain his problems with [the consumer reporting agency]"; he "had to explain his credit woes to the president of the First City Bank in Colleyville when he opened an account there"; he experienced "'considerable embarrassment' from having to detail to business associates and creditors his problems with [the consumer reporting agency]"; and "he had to spend a considerable amount of time since he first disputed his credit report trying to resolve his problems with [the consumer reporting agency]." The Stevenson court upheld an award of $30,000 for mental anguish. Id. The court in Stevenson cited many cases in which damages for mental anguish and embarrassment were awarded. Id. See, e.g., Pinner v. Schmidt, 805 F.2d 1258, 1265 (5th Cir. 1986) (allowing damages for embarrassment and emotional distress, but reducing the award from $100,000 to $25,000); Collins v. Retail Credit Co., 410 F. Supp. 924, 936 (E.D. Mich. 1976) (award of $21,750 for embarrassment and humiliation) (additional citations omitted).

The case at hand is more like Stevenson than Cousin. Plaintiff stated in his affidavit that he was embarrassed by Defendant's publishing of alleged false information to a bank in a small town where he had done business for years, and where he

23

personally knew the president and vice president.[71]  Plaintiff further claims that he was embarrassed and he suffered mental anguish because he lives in a small town where most people know him, and information that his credit is bad could easily circulate through the town.[72]  Plaintiff also incurred over $4,000 in attorney's fees and costs to get the alleged false information removed from his credit file,[73] and spent a lot of time away from his business trying to get the alleged false information removed from his credit file.[74]  While these may not be all the damages sustained by Plaintiff, they are sufficient to create a genuine issue of material fact as to whether Plaintiff sustained injury, and thereby preclude entry of summary judgment for Defendant.

As to causation, Plaintiff has shown sufficient evidence to create a genuine issue of material fact that Defendant caused his alleged injuries by issuing consumer credit reports with false information to third parties, such as Headland National Bank.

---

[71] Pl. Aff., ¶ 12.

[72] Pl. Dep. at 176-77.

[73] Pl. Aff., ¶ 13.  The court notes the recent holding of the Seventh Circuit Court of Appeals that a claim under FCRA only for attorney's fees and costs, unaccompanied by injury to a plaintiff, does not satisfy the Article III standing requirement of injury in fact.  Crabill v. Trans Union, L.L.C., 259 F.3d 662, 665-667 (7th Cir. 2001).  However, in this case, Plaintiff has alleged injuries in addition to attorney's fees and costs.

[74] Pl. Aff., ¶ 9.

See, e.g., Plaintiff's Exhibits 8, 11.  The FCRA does not require
that a Plaintiff be denied credit in order to bring an action
under § 1681e(b).  See, e.g., Cushman v. Trans Union Corp., 920
F. Supp. 80, 84 (E.D. Pa. 1996) (denying defendant's motion for
summary judgment).

Based on the foregoing, the court finds that Defendant's
Motion For Summary Judgment as to Plaintiff's claims for damages
stemming from alleged negligent conduct by Defendant, under
§ 1681o, are due to be denied.

### 6. Willful Damages, § 1608n

Damages available for willful violations of FCRA available
under § 1681n include the following:

> (1) [] any actual damages sustained by the consumer as
> a result of the failure or damages of not less than
> $100 and not more than $1,000; . . .
> (2) such amount of punitive damages as the court may
> allow; and
> (3) in the case of any successful action to enforce any
> liability under this section, the costs of the action
> together with reasonable attorney's fees as determined
> by the court.

In Dalton v. Capital Assoc. Indus. Inc., the Fourth Circuit Court
of Appeals stated that "[a] showing of malice or evil motive is
not required to prove willfulness under the Act."  257 F.3d 409,
418 (4th Cir. 2001) (citing Stevenson v. TRW, Inc., 987 F.2d 288,
294 (5th Cir. 1993); Yohay v. City of Alexandria Employees Credit
Union, 827 F.2d 967, 972 (4th Cir. 1987)).  Instead, the Dalton

25

court held, "[t]he plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer." Id. (citing Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986)) (additional citations omitted). The Dalton court further held that "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind," but that in that case the record was void of any evidence that the consumer reporting agency acted willfully. Id. The same cannot be said of the instant case.

In this case, a reasonable jury could find that Defendant acted willfully by failing to accurately report Plaintiff's credit history after being notified more than a couple of times that the information it was reporting was false. In addition, Defendant may be found to have acted willfully by failing to include Plaintiff's explanation of his dispute with Hughston Orthopedic Clinic in his credit file.

As provided in the court's discussion of damages under § 1681o, supra, the court finds that Plaintiff has established a genuine issue of material fact as to whether Defendant caused his alleged injuries by issuing consumer credit reports with false information to third parties, such as Headland National Bank. See, e.g., Plaintiff's Exhibits 8, 11.

Based on the foregoing, the court finds that Defendant's Motion For Summary Judgment as to Plaintiff's claims for damages

26

stemming from alleged willful conduct by Defendant, under

§ 1681n, is due to be denied.


B.  Plaintiff's State Law Claims

Defendant asserts that Plaintiff is prohibited from bringing

claims for negligence and defamation by 15 U.S.C. § 1681h(e).

Section 1681h(e) provides the following:

> Except as provided in sections 1681n and 1681o of this
> title, no consumer may bring any action or proceeding
> in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information
> against any consumer reporting agency, any user of
> information, or any person who furnishes information to
> a consumer reporting agency, based on information
> disclosed pursuant to section 1681g, 1681h, or 1681m of
> this title, or based on information disclosed by a user
> of a consumer report to or for a consumer against whom
> the user has taken adverse action, based in whole or in
> part on the report except as to false information
> furnished with malice or willful intent to injure such
> consumer.

If Plaintiff proves Defendant, a consumer reporting agency,

furnished false information with malice or willful intent to

injure the Plaintiff, a consumer, then § 1681h(e) does not apply,

and Plaintiff's state law claims are not barred.  The Eleventh

Circuit has not addressed what "malice" and "willful intent" mean

within the context of the FCRA.  However, the Fifth Circuit Court

of Appeals has held that:

> Under § 1681h(e), consumer reporting agencies are
> generally qualifiedly immune from state law claims for
> defamation unless they involve malice or willful intent
> to injure. Both [parties] agree that courts have

27

> determined that malice under this statutory scheme is
> congruent with the common law standard. <u>See</u> <u>Thornton v.</u>
> <u>Equifax</u>, 619 F.2d 700, 703 (8th Cir. 1980). Thus, to
> establish defamation with malice in the present case,
> one must establish that the defendant when he published
> the words--(1) either knew they were false, or (2)
> published them in reckless disregard of whether they
> were true or not.

<u>Cousin</u>, 246 F.3d at 375 (citations omitted).

Defendant has agreed to this test in its argument.[75] The

issue before the court is whether Defendant 1) published a

statement that it knew was false or 2) acted with reckless

disregard for the truth. "The showing of malice or willful

intent to injure under § 1681h(e) is a higher standard of proof

than the willfulness required for punitive damages under

§ 1681n." <u>Bruce v. First U.S.A. Bank, Nat'l Ass'n</u>, 103 F. Supp.

2d 1135, 1145 (E.D. Mo. 2000) (citing <u>Thornton v. Equifax, Inc.</u>,

619 F.2d 700, 706 (8th Cir. 1980). In order to prove Defendant

acted with reckless disregard for the truth, Plaintiff must prove

that Defendant entertained doubt about the truth of the

statements it published. <u>Parker v. Parker</u>, 124 F. Supp. 2d 1216,

1227 (M.D. Ala. 2000) (citing <u>Wiggins v. Equifax Servs., Inc.</u>,

848 F. Supp. 213, 223 (D.D.C. 1993)).

Based on the evidence, a reasonable jury could find that

Defendant published Plaintiff's consumer credit information with

reckless disregard for its truth or falsity. Plaintiff indicated

---

[75] Def. Br. In Supp. Of Mot. For Summ. J., at 8.

three times to Defendant that it was publishing false information regarding Plaintiff's credit history.  Although consumer credit reports for business purposes cannot be the basis for a FCRA cause of action, reactions to such reports can be sufficient to put the consumer reporting agency on notice that it is publishing false information.  In this case, Plaintiff notified Defendant in late September, 1999,[76] in early  November, 1999,[77] and even had his attorney notify Defendant in writing on May 17, 2000, that it was publishing false credit history information about him.  Yet, Defendant persisted in reporting false credit history information about Plaintiff through at least July 18, 2000.[78]

Defendant argues that allowing the issue of malice to go to the jury is tantamount to a finding that as soon as a consumer disputes an account in a credit report, the credit agency must remove the account.  Defendant asserts that such a finding would render useless the business of credit reporting and that credit

---

[76] Pl. Aff., ¶ 2; Pl. Ex. 2.

[77] Pl. Aff., ¶ 2; Pl. Ex. 4.

[78] See Pl. Ex. 15.  In addition, Plaintiff claims that a report obtained from Credit Technology, Inc. ("CTI"), dated September 6, 2001, indicated that Defendant was still publishing allegedly false information about Plaintiff.  Pl. Ex. 19. However, page five of that report indicates that the information came from one of three credit reporting agencies, one of which was Defendant.  Thus, the court cannot say from Plaintiff's Exhibit 19 that Defendant was still publishing false information regarding Plaintiff in September, 2001.

Case 1:00-cv-01468-WHA-SRW    Document 65    Filed 11/14/01    Page 30 of 32

would become more difficult to obtain and more expensive.[79]  The
court's finding should not be interpreted to reach such as rash
result.  The court is merely saying that based upon the
particular circumstances of this case, whether or not Defendant
acted with a reckless disregard for the truth is better left for
the jury to determine based on the evidence presented at trial.
See, e.g., Yeager v. TRW, Inc., 984 F. Supp. 517, 524-26 (E.D.
Tex. 1997) (court held that plaintiff overcame defendant's
qualified immunity by presenting evidence from which a jury could
infer reckless disregard by the consumer reporting agency).
Accordingly, the court finds that Defendant's Motion For Summary
Judgment is due to be denied as to the preemption of Plaintiff's
state law claims.


C. Conclusion

    Based on the foregoing, the court finds that there is a
genuine issue of material fact as to whether Defendant violated
15 U.S.C. §§ 1681e(b), 1681i(a), and 1681i(c), excepting the
reports issued to Garner Insurance Agency, Salter Insurance
Agency, and Miller Welding.  In addition, the court finds that
there is a genuine issue of material fact as to whether, if
Defendant did violate such sections of the FCRA, Defendant did so
negligently or willfully.  Further, the court finds that

---

[79] Def. Reply at 5.

Plaintiff's state law claims of defamation are not preempted by 15 U.S.C. § 1681h(e) because there is a genuine issue of material fact as to whether Defendant furnished false information with reckless disregard to its truth or falsity.

## IV. ORDER

It is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED as to any violations of the FCRA based on the issuance of credit reports to Garner Insurance Agency, Salter Insurance Agency, and Miller Welding.  Otherwise, it is further CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby DENIED.

DONE this ___14th___ day of November, 2001.

_____
UNITED STATES DISTRICT JUDGE

**EOD** ___11/14/01___

31

## CIVIL APPEALS CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:
   ***Appeals from Final Orders Pursuant to 28 U.S.C. § 1291:*** Only final judgments for orders of district courts (or final orders of bankruptcy courts which have been affirmed by a district court under 28 U.S.C. §158) usually are appealable. A "final" order is one which ends the litigation on its merits and leaves nothing for the district court to do but execute the judgment. A magistrate's report and recommendation is not usually final until judgment thereon is entered by a district court judge. Compare Fed.R.App.P. 5.1, 28 U.S.C. §636(c).

   In cases involving multiple parties or multiple claims, a judgment as to fewer than all parties or all claims is not a final, appealable decision. Fed.R.Civ.P. 54(b) does permit the district court to expressly direct entry of the judgment as fewer than all of the claims or parties. See Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1369 (11th Cir. 1983), cert. denied 464 U.S. 893(1983). Certain matters, such as attorney's fees and costs, are collateral and do not affect the time for appealing from the judgment on the merits. Buchanan v. Stanships, Inc., 495 U.S. 265, 108 S.Ct. 1130, 99 L.Ed 2d 289(1988); Budinich v. Becton, 485 U.S. 196, 108 S.Ct.1717, 100 L.Ed 2d 178 (1988)

   ***Appeals Pursuant to 28 U.S.C. § 1292(b) and FRAP 5:*** The certificate specified in 28 U.S.C. § 1292(b) must be obtained before an application for leave to appeal is filed in the Court of Appeals. Denial or refusal by the district court to issue the certificate is not itself appealable.

   ***Appeals Pursuant to 28 U.S.C. § 1292(a):*** Pursuant to this statute, appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and "[i]nterlocutory decrees... determining the rights and liabilities of parties to admiralty cases..." This statute does not permit appeals from temporary restraining orders.

   ***Appeals pursuant to Judicially Created Exceptions to the Finality Rule:*** These limited exceptions are discussed in many cases, including (but not limited to): Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed 2d 1528 (1949); Forgay v. Conrad, 6 How. (47 U.S.) 201 (1848); Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed 2d 199 (1964); Atlantic Federal Savings & Loan Assn. Of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371 (11th Cir. 1989). Compare  Coopers and Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed 2d 351 (1978); Gulfstream Aerospace Corp. V. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed 2d 296 (1988).

2. **Time for Filing:** To be effective a notice of appeal must be timely filed. Timely filing is jurisdictional. In civil cases FRAP 4(a) and 4(c) set the following time limits:

   ***FRAP 4(a)(1):*** The notice of appeal required by FRAP 3 "must be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry..." (Emphasis added) To be effective, the notice of appeal generally must be filed in the district court clerk's office within the time permitted. If a notice of appeal is mailed, it must be timely received and filed by the district court to be effective. FRAP 4(c) establishes special filing provisions for notices of appeal filed by an inmate confined in an institution, as discussed below.

   ***FRAP 4(a)(3):*** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires." (Emphasis added)

   ***FRAP 4(a)(4):*** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in FRAP 4(a)(4), the time for appeal for all parties runs from the entry of the order disposing of the last such timely filed motion outstanding.

   ***FRAP 4(a)(5) and FRAP 4(a)(6):*** The district court has power to extend the time to file a notice of appeal. Under FRAP 4(a)(5) the time may be extended if a motion for extension if filed within 30 days after expiration of the time otherwise permitted to file a notice of appeal. Under FRAP 4(a)(6) the time may be extended if the district court finds upon motion that a party has not received notice of entry of the judgment or order and that no party would be prejudiced by an extension.

   ***FRAP 4(c):*** "If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid.

3. **Format of Notice of Appeal:** Form 1, FRAP Appendix of Forms, is a suitable format. See also FRAP 3(c).
   A single notice of appeal may be filed from a (single) judgment or order by two or more persons whose "interests are such as to make joinder practicable..." (FRAP 3(b)]

4. **Effect of Notice of Appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction (see Fed.R.Civ.P. 60) or to rule on a timely motion of the type specified in FRAP 4(a)(4).