IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| L.A. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 00-A-1468-S |
| | ) |
| EQUIFAX CREDIT INFORMATION | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This matter is before the court on three post-trial motions by the Defendant: a renewed motion for judgment as a matter of law (Doc. # 174), a motion for a new trial (same), and a motion for remittitur (same). This case involved various claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., with the trial concluding on May 10, 2002. As a result of various rulings, the only claims presented to the jury were for the allegedly negligent and/or willful failure of Equifax to reinvestigate certain aspects of Plaintiff Thompson's credit file. The jury returned a verdict in favor of Thompson only on the negligent failure to reinvestigate claim, awarding him compensatory damages of $80,000, $70,000 of which were attributable to emotional distress and mental anguish. It is the propriety of the award of emotional distress and mental anguish damages that constitutes the gravamen of the motions presently before the court.

EOD  11-25-02        1

For reasons to be discussed, Equifax's motions for judgment as a matter of law is due to be DENIED, the motion for new trial is due to be DENIED subject to acceptance of remittitur, and the motion for remittitur is due to be GRANTED.

## II. JUDGMENT AS A MATTER OF LAW STANDARD

In evaluating a motion for judgment as a matter of law, the court is required to consider all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997), cert. denied sub nom Combs v. Meadow Co., 522 U.S. 1045, 118 S.Ct. 685 (1998). The court must "independently determine whether the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict." Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 739 (11th Cir. 1995) (internal quotation marks and citations omitted). The court should grant the motion only if it finds that reasonable people exercising impartial judgment could not arrive at a contrary verdict, and may not weigh the evidence or decide the credibility of the witnesses. Combs, 106 F.3d at 1526.

To survive a motion for judgment as a matter of law, the nonmoving party must provide more than a scintilla of evidence that there is a "substantial conflict in evidence to support a jury question." Id. If, however, "the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof," then the entry of judgment as a matter of law is appropriate. Pulte Home Corp., 60 F.3d at 738. In other words, Fed. R. Civ.

P. 50 provides for judgment as a matter of law if no evidence has been permitted that would permit a reasonable jury to find for the non-moving party. See Fed.R.Civ.P. 50.

### III. DISCUSSION

Equifax moves the court to grant it judgment as a matter of law or a new trial with respect to Thompson's claim for emotional distress damages allegedly caused by Equifax's violation of 15 U.S.C. § 1681i. In the alternative, Equifax moves the court to remit the award of damages for emotional distress to an amount consistent with the evidence adduced at trial. Thompson counters that the evidence at trial was sufficient to support the award of damages for emotional distress when viewed in light of similar cases.

For a consumer to recover actual damages in a FCRA case, the consumer can show either out-of-pocket expenses, or evidence of humiliation or mental distress, or both. See Cousin v. Trans Union Corp., 246 F.3d 359, 369 n.15 (5th Cir. 2001). See also Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995) (collecting cases holding that under the FCRA, actual damages may include humiliation and mental distress, even in the absence of out-of-pocket expenses). A claim for mental distress damages must be supported by something more than the plaintiff's own conclusory allegations. Support can come from the surrounding circumstances or "other evidence of genuine injury, such as [] evidence of the injured party's conduct and the observations of others." Cousin, 246 F.3d at 371.

In the present case, the evidence of Thompson's mental distress was not overwhelming. Several times during his testimony, Thompson stated that the conduct of Equifax angered him. He testified that he was angered upon learning that certain disputed inaccuracies remained in his credit file after several attempts to have them corrected. When prompted by his attorney to explain the nature of his mental distress claim, Thompson replied that it was for the "aggravation and just worrying about it." Exh. A to Def. Reply Brief at 61. Asked to explain the overall effect of his dealings with Equifax, Thompson related:

> Well, it's hard to explain. You're working and hiring a lawyer for a year and, you know, working trying to get [inaccurate information] taken off [your credit file]. And then you have to hire somebody to try to take it off, and then you're back at square one after all that. And then you have to–you're forced–you're forced to file a lawsuit, or it would still be right there.

Exh. A at 62.

Equifax principally relies on Cousin in its contention that no reasonable jury could have inferred that Thompson suffered from any genuine mental anguish or emotional distress. Thompson's testimony, Equifax argues, is legally insufficient evidence of a compensable injury. In Cousin, the court held that the plaintiff's testimony regarding his being angered and frustrated at seeing two inaccurate credit reports published by the defendant was legally insufficient to support a claim for mental distress damages. See 246 F.3d at 371 (citing Carey v. Piphus, 435 U.S. 247 (1978) and Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927 (5th Cir. 1996) for the proposition that federal claims for emotional distress require "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award").

4

In Casella, another case cited by Equifax, the court held that a plaintiff could not recover mental distress damages where he had failed to show that another party had received the inaccurate credit information. See 56 F.3d at 475. The court reasoned:

> No rational trier of fact could infer from this record that any potential creditor or other person in [the plaintiff's] community learned of any harmful information from [the defendants]. Casella's argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report. We are unaware of any case extending FCRA damages that far . . . .

Id. The court went further to suggest that recovery under the FCRA may be contingent on having been denied credit based on erroneous information, but did not reach the issue. See id.

Responding to the assertion that the evidence is insufficient to support the jury's award of mental distress damages, Thompson cites a Fifth Circuit case decided prior to Cousin, Stevenson v. TRW Inc., 987 F.2d 288 (5th Cir. 1993). The Stevenson court upheld an award of $30,000 for mental anguish, reasoning:

> The record reveals evidence . . . that Stevenson suffered mental anguish over his lengthy dealings with TRW after he disputed his credit report. First, Stevenson testified it was "terrific shock" to him to discover his bad credit rating after maintaining a good credit reputation since 1932. Second, Stevenson was denied credit three times during TRW's reinvestigation . . . Third, Stevenson had to explain his credit woes . . [;] [d]espite the fact that he was ultimately able to obtain credit, Stevenson testified to experiencing "considerable embarrassment" from having to detail to business associates and creditors his problems with TRW. Finally, Stevenson spent a considerable amount of time since he first disputed his credit report trying to resolve his problems with TRW.

Id. at 297. At least two other courts have held that a substantial amount of time spent addressing one's problems with a credit agency is a factor supporting the award of mental distress damages in the FCRA context. See Pinner v. Schmidt, 805 F.2d 1258, 1265 (5th Cir. 1986); Thompson v. San Antonio Retail Merchants Ass'n, 682 F.2d 509, 513-14 (5th Cir. 1982). In Thompson, the

court noted that "the inaccurate information remained in [the defendant's] files for almost one and one-half years after [it] was inserted. Even after the error was discovered, [the plaintiff] spent months pressing [the defendant] to correct its mistakes and fully succeeded only after bringing a lawsuit against [the defendant]." 682 F.2d at 514. The court held that "the trial judge was entitled to conclude that the humiliation and mental distress were not minimal but substantial." Id.

Having carefully considered the pertinent case law on the issue of mental distress damages in FCRA cases, and without deciding whether Cousin abrogates Stevenson in some way,[1] this court is of the opinion that the present case falls somewhere along the spectrum between the factual scenarios in Cousin and Stevenson. On the one hand, Thompson was unable to prove that he was denied credit on the basis of any erroneous information contained in his Equifax credit file. Furthermore, there was scant evidence of any harm to his reputation other than one of his employees joking with him about his credit problems. On the other hand, the evidence at trial demonstrated that Thompson spent many frustrating months trying to resolve his problems with Equifax. Furthermore, the jury had ample opportunity to observe Thompson's demeanor on the witness stand and to assess his credibility when he described his anger and frustration with respect to Equifax's inability to correct the errors in his credit file. Consequently, the court cannot conclude as a matter of law that reasonable people exercising impartial judgment could not have found that Thompson suffered compensable mental anguish as

---

[1] Interestingly, the Cousin court did not discuss Stevenson in its analysis of the sufficiency of the evidence. See Cousin, 246 F.3d at 369-71.

a result of Equifax's negligent failure to properly reinvestigate the disputed items. Accordingly, Equifax's motion for judgment as a matter of law is due to be DENIED.

This is not to say that the size of the jury's mental distress award was consistent with the evidence. As noted, Thompson failed to prove that he was denied credit as a result of incorrect information contained in an Equifax report. Nor did he prove any harm to his reputation or any attendant humiliation–his friend from Headland National Bank testified that, to the contrary, Thompson remained a valued and trusted customer in spite of the derogatory information in his credit file.

The court is well aware that "[t]he standard of review for awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1349 (11th Cir. 2000) (quoting Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) (quotation marks omitted). Where a verdict is so excessive that it "shocks the conscience," however, the court may remit the award to an amount consistent with the evidence. See Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1447 (11th Cir. 1985). "In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." Id. (citing Howell v. Marmpegaso Compania Naviera, S.A., 536 F.2d 1032, 1034-35 (5th Cir. 1976)). Since, however, an award for emotional distress and mental anguish is not subject to precise calculation, as was the evidence in Goldstein, the court finds that, if it orders a remittitur, the Plaintiff must be given the option of a new trial in lieu of accepting the

remittitur. See Johansen v. Combustion Engineering, Inc., 170 F.3d 1320, 1328-1329 (11th Cir. 1999) (citing Hetzel v. Prince William County, Va., 523 U.S. 208, 118 S.Ct. 1210, 1211 (1998)).

Considering all the evidence in this case, the court finds that $20,000 is the outer limit of an award for emotional distress and mental anguish which could be supported by the evidence and not shock the conscience Therefore, the court finds that it is proper to reduce the jury's award of $70,000 for this category of compensatory damages to $20,000, the maximum amount consistent with the evidence adduced at trial, to give the Plaintiff an opportunity to accept this amount, and to grant a new trial on that issue in the absence of acceptance.

## IV. CONCLUSION

For the reasons discussed, it is hereby ORDERED:

1  Equifax's renewed motion for judgment as a matter of law is DENIED.

2. Equifax's motion for a new trial is DENIED, subject to Plaintiff's acceptance of the order of remittitur.

3. Equifax's motion for remittitur is GRANTED with respect to the jury's award of compensatory damages for emotional distress and mental anguish.

4. The jury's award of compensatory damages for emotional distress and mental anguish is remitted from $70,000 to $20,000, thereby reducing the total compensatory damages from $80,000 to $30,000.

5. The Plaintiff is given **until December 13, 2002** to file a Notice of Acceptance of Remittitur, if he accepts the remittitur.

6. If the Plaintiff does not file a Notice of Acceptance of Remittitur on or before December 13, 2002, the court will order a new trial limited to the issue of compensatory damages for emotional distress and mental anguish.

Done this 25th day of November, 2002.

W. HAROLD ALBRITTON
CHIEF UNITED STATES DISTRICT JUDGE

## CIVIL APPEALS CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:
   *Appeals from Final Orders Pursuant to 28 U.S.C. § 1291:* Only final judgments or orders of district courts (or final orders of bankruptcy courts which have been affirmed by a district court under 28 U.S.C. §158) usually are appealable. A "final" order is one which ends the litigation on its merits and leaves nothing for the district court to do but execute the judgment. A magistrate's report and recommendation is not usually final until judgment thereon is entered by a district court judge. Compare Fed.R.App.P. 6.1, 28 U.S.C. §636(c).

   In cases involving multiple parties or multiple claims, a judgment as to fewer than all parties or all claims is not a final, appealable decision. Fed.R.Civ.P. 54(b) does permit the district court to expressly direct entry of the judgment as fewer than all of the claims or parties. See Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983), cert. denied 464 U.S. 893(1983). Certain matters, such as attorney's fees and costs, are collateral and do not affect the time for appealing from the judgment on the merits. Buchanan v. Stanships, Inc., 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed 2d 289(1988); Budinich v. Becton, 486 U.S. 196, 108 S.Ct.1717, 100 L.Ed 2d 178 (1988)

   *Appeals Pursuant to 28 U.S.C. § 1292(b) and FRAP 5:* The certificate specified in 28 U.S.C. § 1292(b) must be obtained before an application for leave to appeal is filed in the Court of Appeals. Denial or refusal by the district court to issue the certificate is not itself appealable.

   *Appeals Pursuant to 28 U.S.C. § 1292(a):* Pursuant to this statute, appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and "[i]nterlocutory decrees... determining the rights and liabilities of parties to admiralty cases..." This statute does not permit appeals from temporary restraining orders.

   *Appeals pursuant to Judicially Created Exceptions to the Finality Rule:* These limited exceptions are discussed in many cases, including (but not limited to): Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed 2d 1528 (1949); Forgay v. Conrad, 6 How. (47 U.S.) 201 (1848); Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed 2d 199 (1964); Atlantic Federal Savings & Loan Assn. Of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371 (11th Cir. 1989). Compare Coopers and Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed 2d 351 (1978); Gulfstream Aerospace Corp. V. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed 2d 296 (1988).

2. **Time for Filing:** To be effective a notice of appeal must be timely filed. Timely filing is jurisdictional. In civil cases FRAP 4(a) and 4(c) set the following time limits:

   *FRAP 4(a)(1):* The notice of appeal required by FRAP 3 "must be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry..." (Emphasis added) To be effective, the notice of appeal generally must be filed in the district court clerk's office within the time permitted. If a notice of appeal is mailed, it must be timely received and filed by the district court to be effective. FRAP 4(c) establishes special filing provisions for notices of appeal filed by an inmate confined in an institution, as discussed below.

   *FRAP 4(a)(3):* "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires." (Emphasis added)

   *FRAP 4(a)(4):* If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specific in FRAP 4(a)(4), the time for appeal for all parties runs from the entry of the order disposing of the last such timely filed motion outstanding.

   *FRAP 4(a)(5) and FRAP 4(a)(6):* The district court has power to extend the time to file a notice of appeal. Under FRAP 4(a)(5): time may be extended if a motion for extension if filed within 30 days after expiration of the time otherwise permitted to file notice of appeal. Under FRAP 4(a)(6) the time may be extended if the district court finds upon motion that a party has not received notice of entry of the judgment or order and that no party would be prejudiced by an extension.

   *FRAP 4(c):* "If an inmate confined in an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a notarized statement or by a declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and states that first-class postage has been prepaid.

3. **Format of Notice of Appeal:** Form 1, FRAP Appendix of Forms, is a suitable format. See also FRAP 3(c). A single notice of appeal may be filed from a (single) judgment or order by two or more persons whose "interests are such as make joinder practicable..." (FRAP 3(b)]

4. **Effect of Notice of Appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, or for actions in aid of appellate jurisdiction (see Fed.R.Civ.P. 60) or to rule on a timely motion of the type specified in FRAP 4(a